UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**THE DETROIT INSTITUTE OF ARTS on behalf of itself and the CITY OF DETROIT, MICHIGAN,**

      **Plaintiff and**
      **Counter-Defendant,**      CASE NO. 06-10333

                                        **HONORABLE DENISE PAGE HOOD**

**v.**

**CLAUDE GEORGE ULLIN, et al.,**

      **Defendants and**
      **Counter-Plaintiffs.**
_____/

**MEMORANDUM OPINION AND ORDER**

**I.      INTRODUCTION**

      This matter is before the Court on Plaintiff/Counter-Defendant The Detroit Institute of Arts' Motion to Dismiss Counterclaims, filed on June 19, 2006.  On August 8, 2006, Defendants/Counter-Plaintiffs filed a Brief in Opposition to Plaintiff/Counter-Defendant's Motion to Dismiss.  Oral argument was heard on September 13, 2006.

      Plaintiff/Counter-Defendant, The Detroit Institute of Arts, a private non-profit corporation operating as a museum open to the public, brought the present quiet title action pursuant to 28 U.S.C. § 1332 and § 1655, requesting declaratory and injunctive relief, against Defendants/Counter-Plaintiffs, who are the heirs of Martha Nathan, a prior owner of the

1

Painting.[1] On April 27, 2006, Defendants/Counter-Plaintiffs filed Counterclaims against Plaintiff/Counter-Defendant DIA for declaratory judgment, restitution, and conversion.

DIA has moved to dismiss Defendants/Counter-Plaintiffs' Counterclaims because the Michigan statute of limitations bars Defendants/Counter-Plaintiffs' claim to the Painting since they did not raise their claim until 2004, sixty-six years after its original sale in 1938. Also, Defendants/Counter-Plaintiffs are barred from asserting their claims under the doctrine of laches because Defendants/Counter-Plaintiffs unreasonably delayed asserting a claim to the Painting.

## II.    STATEMENT OF FACTS

The instant matter arises out of a dispute as to the ownership of a painting by Vincent Van Gogh, entitled *Les Becheurs* (The Diggers)(1889) (the "Painting"). Plaintiff/Counter-Defendant has had continuous ownership of the Painting since 1969, when DIA received it as a bequest from art collector, Robert H. Tannahill. Defendants/Counter-Plaintiffs are the heirs of Martha Nathan, the prior owner of the Painting who was a Jewish woman born in Frankfurt am Main, Germany. Mrs. Nathan was married to a prominent art collector, Hugo Nathan. Upon Mr. Nathan's death in 1922, Mrs. Nathan inherited numerous artworks, including the Painting. Mr. Nathan expressly indicated in a codicil to his will that he was bequeathing his artworks to Mrs. Nathan in anticipation that she would sell some of the artworks to meet her financial needs. In 1938, Mrs. Nathan sold the painting to a group of European Art dealers, who in turn, sold the Painting to Mr. Tannahill.

---

[1] Defendants/Counter-Plaintiffs include: Claude George Ullin, Albert Henry Ullin, Peggy Dreyfus-Kaufman, Christopher Georges Dreyfus, Dominic Georges Dreyfus, Coralie Cowper F/K/A Coralie Eve Dreyfus, Brigitte Bernard-Salin, Elizabeth Cronk Salin, Francois Birman, Isabelle Williams, Stephanie Birmant, and Brigitte Amzalac (Defendants/Counter-Plaintiffs).

In February 1937, Mrs. Nathan left Germany in order to escape Nazi persecution, moved to Paris, France and obtained French citizenship.  In May 1938, Mrs. Nathan returned to Germany to sell her home.  The Nazi government made her turn over six paintings in her home to the Staedel Art Institute, none of which included the Painting.   In August 1938, she moved her household goods from Germany to France, placing them in storage.[2]  Prior to December 1938, she moved some of her artworks, including the Painting, to Basel, Switzerland.  On December 14, 1938, a year and a half after living in France and before the German occupation of France, Mrs. Nathan sold some of her artwork, including the Painting, then located in Basel, Switzerland, to three prominent European art dealers.[3]  Two of the art dealers, Justin Thannhauser and Alexander Ball, knew of, and had been familiar with Mrs. Nathan for many years as they were German Jews, whose families owned art galleries in Germany and who also left Germany to escape Nazi persecution. The other art dealer, George Wildenstein, was also Jewish, but not German.  Mrs. Nathan sold the painting to the three men for 40,920 Swiss Francs (approximately U.S. $9,360).

Following World War II, and the fall of the Nazi regime, Mrs. Nathan pursued and succeeded in obtaining restitution and damages for wartime losses that were a result of Nazi persecution.  She successfully obtained compensation for an exit tax the Nazi government required her to pay when she originally left Germany, the sale of her home which was deemed to be for less than fair market value, the six paintings she was required to turn over to the Staedel Art Institute, and the household items that were confiscated by the Nazi regime.  At no time did

---

[2] These goods were eventually confiscated by the Nazi regime in June 1942.

[3] Defendants/Counter-Plaintiffs deny that a sale occurred.

3

Mrs. Nathan pursue restitution or damages for the Painting.

Upon her death in 1958, Mrs. Nathan's brother, Willy Dreyfus, co-executor of her estate protected her estate's interests up until his death in 1977. Willy Dreyfus also sought compensation for his family's wartime losses, filing an action in U.S. Federal court in 1973.

In 1999, the American Association of Museums adopted the Guidelines Concerning the Unlawful Appropriation of Objects During the Nazi Era. Pursuant to these guidelines, DIA posted on its website artwork having a Nazi-era provenance, including the Painting. Defendants/Counter-Plaintiffs contacted DIA in May 2004, asserting a claim of ownership. After investigating the provenance of the artwork, Plaintiff/Counter-Defendant contacted Defendants/Counter-Plaintiffs informing them that it had rejected their claim of ownership.

### III.    APPLICABLE LAW & ANALYSIS

#### A.    Standard of Review

Federal Rules of Civil Procedure 12(b)(6) provides for a motion to dismiss for failure to state a claim upon which relief can be granted. This type of motion tests the legal sufficiency of the plaintiff's Complaint. *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986). A court takes the factual allegations in the Complaint as true when evaluating the propriety of dismissal under Fed. R. Civ. P. 12(b)(6). *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509,512 (6th Cir. 2001); *Hoeberling v. Nolan*, 49 F. Supp.2d 575, 577 (E.D. Mich. 1999). Further, the court construes the complaint in the light most favorable to the plaintiff, and determines whether it is beyond a doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Varljen v. Cleveland Gear Co., Inc.*, 250 F.3d 426, 429 (6th Cir. 2001).

**B.     Plaintiff/Counter-Defendants' Motion to Dismiss Counterclaims**

This Court must apply the choice of law rules of the forum state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). "Under Michigan's common law choice of law rule, statutes of limitation are considered procedural and are governed by the law of the forum." *Johnson v. Ventra Group, Inc.*, 191 F. 3d 732, 746 (6th Cir. 1999). As such, Defendants/Counter-Plaintiffs' claims for restitution and conversion are governed by MICH. COMP. LAWS § 600.5805.  Under this statute, Defendants/Counter-Plaintiffs were required to bring their cause of action for injuries to property within three years of the date on which the claim first accrued.  *See* MICH. COMP. LAWS § 600.5805(10).

"A conversion is committed when dominion is wrongfully asserted over another's property.  Therefore, the statute on a claim for conversion would not start to run until the date when dominion is asserted." *Miller v. Green*, 37 Mich. App. 132, 138; 194 N.W.2d 491 (1971). Claims for the recovery of personal property accrue "at the time the wrong upon which the claim is based was done regardless of the time when damage results." MICH. COMP. LAWS § 600.5827. "If the discovery rule is applied, . . . the period of limitations does not begin to run until the plaintiff discovers, or through the exercise of reasonable diligence should have discovered, that he had a possible cause of action." *Brennan v. Edward D. Jones & Co.*, 245 Mich. App. 156, 159; 626 N.W.2d 917 (2001).  Plaintiff/Counter-Defendant DIA argues that Michigan does not apply the discovery rule to toll the statute of limitations for conversion claims. Plaintiff/Counter-Defendant cites *John Hancock Financial Services, Inc. v. Old Kent Bank*, 185 F. Supp. 2d 771, 779-80 (E.D. Mich. 2002) in support of this proposition.  However, *John Hancock* states that the discovery rule does not apply to toll the statute of limitations for

5

conversion claims involving *negotiable instruments*. *Id*. (Emphasis added). Notwithstanding this fact, Plaintiff/Counter-Defendant is correct that the discovery rule is inapplicable to the facts in this matter. In *Brennan*, the Michigan Court of Appeals stated that,

> [t]he strong public policies favoring finality in commercial transactions, protecting a defendant from stale claims, and requiring a plaintiff to diligently pursue his claim outweigh the prejudice to plaintiffs and militate against applying a discovery rule in the context of commercial conversion cases.

*Brennan*, 245 Mich. App. at 160. As such, Defendants/Counter-Plaintiffs' Counterclaims accrued on the date that Mrs. Nathan sold the Painting to the three European art dealers in 1938. In other words, their claim accrued in 1938, the date of the alleged wrong giving rise to Defendants/Counter-Plaintiffs Counterclaims.

Even if this Court were to apply the discovery rule to Defendants/Counter Plaintiffs' Counterclaims, this would not save the Counterclaims from being barred by the statute of limitations. In 1973, the executor of Mrs. Nathan's estate made claims in addition to those previously asserted by Mrs. Nathan, for his families wartime losses. At this point, Mrs. Nathan's heirs, "through the exercise of reasonable diligence should have discovered" that they had a possible cause of action to recover the Painting.

In regard to Defendants/Counter-Plaintiffs' Counterclaim for declaratory judgment, the Sixth Circuit has stated that "[b]ecause a declaratory judgment action is a procedural device used to vindicate substantive rights, it is time-barred only if relief on a direct claim would be barred." *International Ass'n of Machinists and Aerospace Workers v. Tennessee Valley Authority*, 108 F. 3d 658, 668 (6th Cir. 1997). As such, Defendants/Counter-Plaintiffs' Counterclaim that seeks declaratory relief is likewise barred because the underlying substantive claims of conversion and restitution are barred by Michigan's three-year statute of limitations.

Defendants/Counter-Plaintiffs assert that Plaintiff/Counter-Defendant voluntarily waived its statute of limitations defense by adopting the American Association of Museum Guidelines and posting the Painting on its website.  Defendants/Counter-Plaintiffs argue that by posting the Painting on its website, Plaintiff/Counter-Defendant made a general invitation to the public to come forward and make a claim of ownership.  Defendants/Counter-Plaintiffs further assert that their Counterclaims accrued when Plaintiff/Counter-Defendant rejected their claim to ownership of the Painting in 2005. As such, their Counterclaims were filed within the applicable three year statute of limitations.  This argument is without merit.

Under Michigan law, a waiver is an "intentional abandonment of a known right." *Roberts v. Mecosta Co. Hospital*, 466 Mich. 57, 64; 642 N.W. 2d 663 (2002).  It is clear that by adopting the Guidelines, Plaintiff/Counter-Defendant was not intentionally waiving its right to assert any defenses it may be entitled to.  The Guidelines specifically state that they "are intended to assist museums in addressing issues relating to objects that may have been unlawfully appropriated during the Nazi era . . . ." (Pl.'s Mot. to Dismiss, Ex. B) The Guidelines further state that "in order to achieve an equitable and appropriate resolution of claims, museums *may elect* to waive certain available defenses."  (*Id.*) Plaintiff/Counter-Defendant has sought to achieve resolution of this claim by initiating the instant quiet title action.  This act alone is inapposite to waiving its right to assert defenses it may have available to it.  The Court finds that Plaintiff/Counter-Defendant has not waived its right to assert a statute of limitations defense, and that Defendants/Counter-Plaintiffs' Counterclaims are barred by Michigan's statute of limitations, and must be dismissed.  *See Toledo Museum of Art v. Ullin*, 2006 WL 3827512 (N.D. Ohio).

## IV. CONCLUSION

Accordingly,

IT IS ORDERED that Plaintiff/Counter-Defendant The Detroit Institute of Arts' Motion to Dismiss Counterclaims [**Docket No. 27, filed on June 19, 2006**] is GRANTED.

IT IS FURTHER ORDERED that Defendants/Counter-Plaintiffs' Counterclaims are DISMISSED WITH PREJUDICE.


                                          /s/ Denise Page Hood
                                          DENISE PAGE HOOD
Dated: March 31, 2007                    United States District Judge


I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2007, by electronic and/or ordinary mail.

                                        S/William F. Lewis
                                        Case Manager